```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ x
                                                       :
RUSSELL DEFREITAS,                                     :
                                                       :
                           Petitioner,                 :        **MEMORANDUM & ORDER**
                                                       :
             -against-                                 :        08-cv-0052 (DLI)(RLM)
                                                       :
CAMERON LINDSAY, WARDEN,                               :
                                                       :
                           Respondent.                 :
                                                       :
------------------------------------------------------ x
```

**DORA L. IRIZARRY, United States District Judge:**

Petitioner Russell Defreitas filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from administrative detention in the Special Housing Unit ("SHU") of the Metropolitan Detention Center ("MDC") into the prison's general population. He contends that the MDC's decision to place him in the SHU is based entirely on the nature of the charges against him and therefore, constitutes punishment in violation of his Due-Process rights. The government opposes this request by arguing that Petitioner's confinement is a justified precaution for maintaining prison security. For the reasons set forth below, Petitioner's petition is denied.

**I.    BACKGROUND**

Petitioner is facing charges of conspiring to detonate explosive devices at John F. Kennedy International Airport ("JFK Airport") in Queens, New York with the intent to destroy or damage fuel tanks, fuel pipelines, buildings and aircraft and cause bodily injury and massive loss. He has been held in the SHU since June 2, 2007. While in the SHU, he is confined to a small, brightly-lit cell for at least twenty-three hours a day. Petitioner, who is sixty-four years

old, complains that the cold temperatures inside the SHU unit exacerbate a number of his health ailments including kidney problems and joint pain. Additionally, as a result of his isolation from other inmates, he claims to suffer from anxiety and depression.

Petitioner initially inquired about the administrative remedy process in August 2007 in an effort to challenge his administrative detention. On August 28, 2007, a senior staff attorney at the MDC provided him with the necessary forms and instructions. Three days later, Petitioner faxed his Informal Resolution Form ("BP-8") to the MDC in which he requested to be removed from SHU because the twenty-three hour lockdowns were causing him great discomfort and was unnecessary. The MDC Unit Team denied this request on September 4, 2007 explaining that Petitioner "is classified as a High Security Inmate, which substantiates his placement in Special Housing for Safety and Security concerns." (Ex. A to Pet'r Mem. of Law.)

On September 11, 2007, Petitioner filed a Request for Administrative Remedy ("BP-9") contending that detention in the SHU is "unnecessary and detrimental" to his health. (Ex. B. to Pet'r Mem. of Law.) For some unidentified reason, the MDC did not receive the request until October 15, 2007, and, as a result of this administrative error, did not respond until November 27, 2007. In the response, the MDC denied the request, citing "security reasons" and explained that his confinement "continues to be reviewed." (*Id*.) The response noted that, if Petitioner needed medical attention, he could request it from the medical staff that makes regular rounds through the SHU Unit or by written request. (*Id*.) The MDC also advised that he could appeal the determination to the Northeast Regional Director of the Federal Bureau of Prisons ("BOP") within twenty days of the denial. (*Id*.)

On December 21, 2007, Petitioner filed a Regional Administrative Appeal. The BOP rejected the appeal because Petitioner had failed to attach copies of previous requests and

responses as required by the written rules governing appellate submissions. Rather than re-filing properly, on January 4, 2008, Petitioner filed this petition. At a status conference on February 7, 2008, the court denied his petition without prejudice for failing to exhaust the administrative remedies. On August 26, 2008, Petitioner exhausted his administrative remedies when the Central Office of the BOP denied his appeal to be removed from the SHU. The court now addresses Petitioner's claims that his administrative detention violates his Due-Process rights.

## II. DISCUSSION

Petitioner provides two reasons why his confinement in the SHU is unlawful. First, he argues that "the conditions of his confinement are unduly punitive and do not appear to be rationally related to any legitimate purpose, violating the dictates of the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979)." (Pet'r Mem. of Law at 6.) Second, he claims that "the MDC has not complied with the regulations governing administrative detention, thereby violating the Due Process Clause of the United States Constitution." (*Id.*)

In response to the first allegation, Respondent, the Warden of the MDC, Cameron Lindsay, justifies the confinement on the basis that Petitioner's presence in the general population constitutes a serious threat to himself and to the safety of the remaining prison population and staff. According to Respondent, this assessment is based on: (1) the serious nature of the crimes with which Petitioner has been charged; (2) the high-profile nature of his case; (3) the fact that accused terrorists are especially likely to be the targets of physical violence; and (4) the potential that Petitioner may radicalize other inmates and recruit them to a terrorist cause. Additionally, due to security reasons, the government has submitted, under seal, further reasons for keeping Petitioner in administrative detention. In response to Petitioner's second

3

allegation, the MDC has provided documents and a sworn declaration demonstrating that Petitioner was confined to the SHU in accordance with the proscribed procedures.

### a. Petitioner's Confinement Is Not Punitive.

The court reviews challenges to pre-trial incarceration conditions under the standards established by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with the due process of law." *Id*. at 535. Accordingly, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538. In order to do this, a court must first determine whether there is an express intent to punish the inmate. *Id*. If there is no such intent, the court must then determine whether the pretrial condition "is reasonably related to a legitimate governmental objective," or if it is "arbitrary or purposeless . . . ." *Id*. at 539. If there is a reasonable relationship, then the pretrial condition will not be deemed to be punitive; however, conditions that are arbitrary or purposeless will be considered impermissible punishment in violation of the Due-Process Clause. *Id*. When making this determination, the Supreme Court has emphasized that:

> "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of correctional officials and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Id*. at 547-48 (citations omitted).

Petitioner does not allege that there is an express intent to punish him or that safeguarding prison staff, other inmates, and himself, is not a legitimate goal for the MDC.

4

Rather, Petitioner contends that his placement in SHU is punitive because it is not reasonably related to maintaining prison security or any other legitimate goal. To support this argument, Petitioner relies heavily on *United States v. Gotti*, which holds that administrative detention is punitive when it is based solely on the nature of the charges against an inmate. 755 F. Supp. 1159, 1165 (E.D.N.Y. 1991). According to Petitioner, all of the government's justifications for keeping him in the SHU amount to no more than a "more nuanced" restatement of its "general thesis" that "Defreitas is in administrative detention purely because of the charges against him." (Pet'r Oct. 17, 2008 Letter). The court disagrees.

Although the nature of the charges against Petitioner certainly factored into Respondent's decision to place Petitioner in the SHU, other considerations factored into the decision as well. For example:

> Although inmates are incarcerated at this facility while awaiting trial or other disposition of alleged criminal activity, correctional experience demonstrates that [inmates] employ their own moral code. As such, cooperators, sexual predators, former law enforcement officers, and terrorists are especially subjected to harassment and physical violence. While MDC Brooklyn can ordinarily find ways to mask the nature of an inmate's commitment to prevent this treatment, it simply cannot do so where the media has divulged as much information as they have in Petitioner's regard.

(C. Lindsay Decl. at ¶ 14.) Petitioner does not challenge these observations. Instead, he argues that "the MDC cannot claim that SHU placement is justified for [his] own protection . . . [because he] has not requested such protection. Just the opposite: he has repeatedly requested that he be transferred to general population." (Pet'r Mem. of Law at 12.) Petitioner's contention that the MDC cannot confine him for his own protection against his wishes is without merit. Prison administrators are authorized, pursuant to 28 C.F.R. § 541.23, to place inmates in administrative detention for their protection, "but not at their own request," when "the staff has good reason to believe that the inmate is in serious danger of bodily harm."

5

Also, Petitioner ignores how protecting one inmate from assaults also protects other inmates and prison staff from injury. If Petitioner is attacked while in the general population, the altercation can injure other inmates drawn into the fight or prison staff attempting to break up the fight. The Supreme Court contemplated situations exactly like this when it emphasized the importance of deferring to the judgments of prison administrators by explaining that:

> In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior; indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution.

*Hewitt v. Helms*, 459 U.S. 460, 474 (1983), *rev'd on other grounds*, (citations and internal quotation marks omitted).

The government's sealed ex parte submissions set forth additional compelling security concerns justifying Petitioner's placement in administrative confinement. Based on the facts set forth in the government's sealed submissions, the court is satisfied that Petitioner's placement in administrative confinement is not punitive, but instead is based on legitimate security concerns.

### b. The MDC Has Complied with the Relevant Procedures.

The Code of Federal Regulations establishes procedures that the MDC must follow when placing an inmate in administrative detention. Within twenty-four hours of placing the inmate in administrative detention, the warden must provide him with an Administrative Detention Order ("ADO") detailing the reasons for his placement. 28 C.F.R. § 541.22(b). Within three work days of the placement, a Segregation Review Officer ("SRO") must conduct a review of the inmate's placement. 28 C.F.R. §541.22(c). If the inmate spends seven continuous days in administrative detention, the SRO must hold a hearing and formally review the status of the

6

inmate. *Id*. Thereafter, the SRO must review the case on the record (in the inmate's absence) each week and hold a hearing and review the case formally at least every thirty days. *Id*. The inmate must appear for the hearing unless he waives his right to do so in a signed writing. *Id*. If the inmate is confined in SHU for longer than thirty days, prison staff must conduct a psychiatric or psychological assessment including a personal interview. *Id*. The evaluation, which addresses the inmate's ability to adjust to his surroundings as well as the potential for harm to himself or others, is then submitted to the SRO in a written report. *Id*. Such evaluations must occur monthly if the inmate is confined for an extended period. *Id*.

Petitioner claims that the MDC has not complied with these regulations. Specifically, he alleges that the MDC never provided timely explanations for his confinement except insufficiently detailed responses to his administrative complaints on September 5, 2007 and November 27, 2007. Furthermore, Petitioner vaguely alleges that "[n]or does it seem as if the MDC has periodically reviewed Mr. Defreitas' status or conducted any hearings in a manner consistent with the regulations." (Pet'r Mem. of Law at 11.) He does not allege that the MDC failed to evaluate his mental health as required by the regulations.

In response, the government has offered evidence to demonstrate that the MDC has satisfied the procedural requirements of 28 C.F.R. § 541.22. Specifically, the government provided an ADO from Lieutenant J. Rivera showing that Petitioner received the document within twenty-four hours from when he was first confined. (Gov't Mem. of Law at Ex. F.) The ADO states that his presence in the general prison population "poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution . . . ." (*Id*.) The government also submitted a sworn declaration from Adam Johnson, a Staff Attorney at the MDC, which explains that the MDC complied with all of the other requirements of 28

7

C.F.R. § 541.22(c). (A. Johnson Decl. at ¶¶ 17-20.) Johnson's assertion is corroborated by reports indicating that Petitioner received his monthly hearings and the MDC conducted weekly reviews of his confinement. (Gov't Mem. of Law at Ex. G, A. Johnson Decl. at ¶ 19.)

Petitioner has not challenged either the authenticity of the documents submitted by the MDC or the veracity of Johnson's declaration. Moreover, Petitioner has not presented any evidence that casts doubt upon the accuracy of those submissions. *See Dixon v. Zenk*, 05-CV-3127, 2008 WL 2437841, at *6 (E.D.N.Y. June 16, 2008). Accordingly, in light of the evidence presented, the court is satisfied that the MDC has substantially complied with the required procedures.

## III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 6, 2008

/s/
DORA L. IRIZARRY
United States District Judge